ALMAND *v.* ALEXANDER.

Opinion delivered January 27, 1930.

948

*W. R. Donham,* for appellant.
*Dillon & Robinson,* for appellee.

HUMPHREYS, J. This is a suit by appellant against appellee for a balance of $3,100 on account for alleged architectural work and general superintendence of the construction of appellee's residence at Scott, Arkansas. Appellant alleged that the cost of the residence was $70,000 and that, according to the written contract between them, he was entitled to ten per cent. of the cost thereof for his services, and had only been paid $3,900. The written contract was incorporated in the complaint as a part thereof, and is as follows:

"CONTRACT BETWEEN ARCHITECT AND OWNER.

"From John P. Almand, architect, to J. R. Alexander, owner, for a compensation of 10% ten perc., the architect proposes to furnish preliminary sketches, contract working drawings and specifications, detail drawings, and give general superintendence of building operations for a residence to be erected for J. R. Alexander at Scott, Ark.

"Terms of payment to be as follows: '60 per cent. based on the cost of the building, when the contract is let, and the balance on the completion of the building.'

"If the work upon the building is postponed or abandoned, the compensation for the work done by the archi-

tect is to bear such relation to the compensation for the entire work as is determined by the published schedule of fees from the American Institute of Architects. In all transactions between the owner and contractor, the architect is to act as the owner's agent, and his duties and liabilities in this connection are to be those of an agent only. The architect will make visits to the building for the purpose of general superintendence, of such frequency and duration as in the architect's judgment will suffice, or may be necessary to fully instruct contractors, pass upon the merits of material and workmanship, and maintain an effective working organization of the several contractors engaged upon the building. The amount of the architect's compensation is to be reckoned upon the total cost of the building, including all stationary fixtures. Drawings and specifications are instruments of service, and as such are to remain the property of the architect, the owner will be entitled to a full set of the plans and specifications, but not be permitted to let or have let, the privilege of building from the plans and specifications without the superintendence of the architect, or his consent for the use of the plans and specifications.

"John P. Almand, Architect.

"J. R. Alexander, Owner.

"Approved and accepted the 12th day of May, 1925."

Appellee filed the following answer:

"The defendant admits that on the 12th day of May, 1925, he entered into a contract with the plaintiff, whereby the plaintiff was to do the architectural work and give general superintendence of the building operations of a residence to be erected for the defendant at Scott, Arkansas. Defendant states that he and the plaintiff also entered into a contract that the said residence was not to cost more than twenty-five thousand dollars ($25,000). Defendant states that, due to the negligence of the plaintiff, and the unworkmanlike manner of his

architectural work and superintendency of the construction of said residence, and general inefficiency, it cost the defendant a great deal more than twenty-five thousand dollars ($25,000), thereby greatly damaging the defendant, and causing him great financial embarrassment, and causing him to have to abandon all of his plans for the future. Defendant denies that the said residence cost seventy thousand dollars ($70,000), and denies that he is indebted to the plaintiff in the sum of thirty-one hundred dollars ($3,100) or any other amount.''

The cause was submitted to a jury upon the pleadings, the testimony introduced by the parties, and the instructions of the court, resulting in a verdict for appellee and a dismissal of appellant's complaint, from which is this appeal.

In addition to the introduction of the written contract between the parties set out above, appellant introduced testimony in chief, to the effect that it cost $70,000 to build the residence; that he fully performed the contract, was entitled to receive $7,000 for his services; that he received $3,900 and was entitled to recover the difference between the amount earned and received.

Appellee introduced testimony, over the objection and exception of appellant, to the effect that, at the time the written contract was entered into between them, it was understood and agreed that the plans and specifications should be drawn for the erection of a residence not to exceed in cost $25,000, whereas plans and specifications were furnished by appellant for a residence which cost, when completed, $60,419.26; and testimony over appellant's objection and exception, relative to several defects in the construction of the residence.

Appellant testified in rebuttal that the written contract was the sole and only agreement between them, and that there was no oral agreement whatever limiting the maximum cost of the residence to $25,000, and that the defects referred to in the construction of the building were not due to his negligence.

Appellant contends for a reversal of the judgment, because the court admitted evidence as to an oral agreement limiting the cost of the residence to $25,000, upon the theory that the parol evidence varied and contradicted the written agreement. There is no better settled rule of law than that unambiguous written contracts cannot be altered or contradicted by parol evidence. The maximum cost of the residence was not fixed in the written contract. Hence the introduction of parol evidence as to the maximum cost thereof would not, and could not, vary and contradict the written contract. If the written contract had fixed the maximum cost of the residence, or had based the fee on the cost, irrespective of the amount, then the rule contended for by appellant would have applied. As the parol evidence did not vary or contradict the written contract, it was admissible in explanation of, and as part of, the contract between the parties. The trial court refused to admit the parol testimony for the purpose of limiting appellant's fee, but admitted it for the sole purpose of showing whether appellant was negligent or inefficient. The court erred in placing such a limitation upon the testimony, but the error was favorable to appellant.

Appellant also contends that the court erred in admitting testimony relative to defects in the construction of the residence. It is argued that none of them were specifically alleged, and for that reason it was error to admit evidence relative to them. The allegation of negligence in the answer was general and very broad. Appellant did not file a motion to make the allegation of negligence and inefficiency more specific; so we think, evidence of any defect in the construction of the residence was admissible.

Appellant's next and last contention for a reversal of the judgment is that the court submitted the case to the jury upon the erroneous theory that, if appellant and appellee contracted orally that the residence should not cost more than $25,000, they should return a verdict for

appellee. According to the testimony introduced by appellant, the residence cost $70,000, and, according to that introduced by appellee, the residence cost $60,419.26. It is undisputed that appellee paid, and appellant received, $3,900 for his services. In view of the testimony as to the cost of the residence and of the amount that appellant received, the jury should have returned a verdict for appellee, if it found that appellant and appellee contracted orally that the residence should not cost more than $25,-000. This is true, because the maximum fee he could have charged, if the maximum cost of the house was not to exceed $25,000, would have been $2,500, and he received more than that amount. In this view of the case, it is unnecessary to discuss alleged errors in the refusal to grant certain instructions requested by appellant, and in giving certain instructions requested by appellee. This case turned upon the issue whether the maximum cost of the residence should exceed $25,000, and that issue was submitted to the jury and determined adversely to appellant.

No error appearing, the judgment is affirmed.