A. Anthony VACCARO *v.* Robert C. SMITH
d/b/a Smith & Son Enterprises

CA 89-181                                              779 S.W.2d 193

Court of Appeals of Arkansas
Division I
Opinion delivered November 8, 1989

*Evans, Farrar, Reis & Love*, by: *Bryan J. Reis*, for appellant.

*Curtis L. Ridgway, Jr.*, for appellee.

JOHN E. JENNINGS, Judge. This was a suit in contract. Appellant, Anthony Vaccaro, lives on Lake Hamilton in Hot Springs. In early 1987, he entered into a written contract with the appellee, Robert C. Smith. Smith was to construct a motorized trolley from Vaccaro's house down a fairly steep incline to his boat dock on the lake. The contract provided:

> This contract between Robert C. Smith dba Smith and Sons Enterprises (contractor) and A. Anthony Vaccaro for the construction and installation of one (1) radio controlled trolley on the premise of A. Anthony Vaccaro.
>
> A. Anthony Vaccaro to pay for all material at contractor's cost, and pay $20.00 per man hour for construction and installation of said trolley.

Estimated cost:    $8,000.00

Payment.            $1,500 in advance for purchase of materials and one draw after at least 50% completion of job. Balance upon completion.

Specifications on equipment:

All steel car and rails with counter weighted car, 2 hp winch to run at approximately 100 feet per minute. Safety brake on rails to prevent car from traveling if counter weight should become disconnected. Sears digital controller, landing with hand rails and car equipped with hand rails and gate interlocked so car cannot be moved until gate is locked.

Diamond plate decking on car and landing black primer.

The agreement was signed by both parties and dated June 2, 1987. Construction was completed on July 17, 1987, and Smith billed Vaccaro for $16,369.07. Vaccaro refused to pay more than the $7,500.00 which he had paid Smith during the course of construction and Smith filed a lien for the balance. Subsequently, Smith sued to foreclose that lien.

At trial Smith testified that, because of the terrain, he could not have made an accurate estimate of the cost of installing the rails, and that he told Vaccaro this. Smith's profit on the job came from the difference between the contract price for labor of $20.00 per man hour and the $10.00 per hour he paid for millwright labor or the $15.00 per hour he paid to welders. He testified that he had anticipated using only 400 feet of iron but ended up using 900 feet, because of the steep terrain.

Mr. Vaccaro and his ex-wife, Gloria Vaccaro, both testified that, despite the language of the contract, the parties intended that the cost of the job would not exceed $8,000.00.

Bryan Reis, Vaccaro's counsel on this appeal, testified at trial that he represented Vaccaro on a fulltime basis.[1] He said

---

[1] The supreme court has held that it is not appropriate to serve as appellate counsel after having testified in the case. *Boling* v. *Gibson*, 266 Ark. 310, 584 S.W.2d 14 (1979);

that Smith told him he had no idea what the job would cost when he began the work. He also said Smith told him that it didn't matter whether he told Vaccaro of cost overruns because "Vaccaro was rich."

On this evidence the court held that Smith was entitled to recover the first $8,000.00 for material costs and labor in accordance with the contract, but that he was only entitled to recover the actual cost of labor for the excess over $8,000.00. The chancellor held that Smith was entitled to $12,944.50 and awarded a net judgment of $5,444.50, after deducting the amount previously paid.

On appeal, Vaccaro contends that Smith's recovery should have been limited to $8,000.00. On cross-appeal, Smith contends that the chancellor erred in not awarding him the full amount claimed. We find no error and affirm.

Appellant contends that the chancellor erred in not construing the contract as setting a maximum cost of $8,000.00. If the contract was ambiguous, as the appellant contends, then its meaning would be a question of fact for the chancellor to determine. *Floyd* v. *Ottercreek Homeowners Assoc.*, 23 Ark. App. 31, 742 S.W.2d 120 (1988); *Don Gilstrap Builders, Inc.* v. *Jackson*, 269 Ark. 876, 601 S.W.2d 270 (Ark. App. 1980). We do not agree, however, that the language of this contract was ambiguous. In *J.E. Hathman, Inc.* v. *Sigma Alpha Epsilon Club*, 491 S.W.2d 261 (Mo. 1973), the court said that "the words 'estimate' and 'estimated' are inconsistent with a promise to do specific work for an exact sum. The word 'estimate' negates certainty; it means 'to calculate roughly, or to form an opinion as to amount from imperfect data.'" *J.E. Hathman, Inc.*, at 266. (Citation omitted.) The court held that the word "estimated" was not an ambiguous term.

Appellant also argues that the court erred in not holding that Smith was estopped from recovering more than the amount of the estimate. This argument is based on appellant's contention that Smith represented to him that the trolley would cost no more than $8,000.00. Smith, however, denied making

---

*Milburn v. State*, 262 Ark. 267, 555 S.W.2d 946 (1977).

such a representation and that testimony, together with the language of the contract itself, is sufficient to support a finding that such a representation was not made.

Appellant's main contention on appeal, and appellee's argument on cross-appeal, center on the interpretation and application by the trial court of *Clark & Friberg* v. *Madeira*, 252 Ark. 157, 477 S.W.2d 817 (1972). In that case Madeira and his wife bought an older house in Eureka Springs. They hired Friberg, an architect, to prepare plans for the remodeling of the house and to supervise the construction. They also hired Clark as the general contractor on a cost plus ten percent basis. Friberg was to be paid six percent of the cost of the work.

Friberg prepared contracts for the Madeiras which contained a cost estimate of $23,000.00 and stated that the work would be completed in ninety days. The actual cost was $43,000.00 and it took fifteen months to complete the work. In the resulting lawsuit the jury found for the homeowners.

On appeal, the architect argued that he should have been entitled to his six percent fee on the total cost of the project. The supreme court said:

> One cannot profit by his own wrong. Consequently an architect whose cost estimate is culpably below the actual cost of the job is not entitled to a commission *upon the excess*. (Citations omitted and emphasis added.)

252 Ark. at 158.

In the case at bar, appellant contends that the proper application of *Clark* to the facts of the case at bar requires that Smith be disallowed any recovery over and above the amount of his estimate. We think however, the trial court's interpretation of the supreme court's decision in *Clark* was the correct one. The chancellor held that Smith's estimate was "culpably below the actual cost of the job" and therefore refused to allow him any profit on the amount by which the actual cost exceeded the estimate. This is the same result reached in *Clark* and is consistent with the holding in that case.

On cross-appeal, the appellee contends that the principle in *Clark* should not be extended to apply to non-architects.

Here, however, Smith had previous experience in building trolleys of this kind and was responsible for its layout design, as well as its construction. We think the rule in *Clark* is sufficiently broad to extend to the facts of the case at bar.

Affirmed.

COOPER and MAYFIELD, JJ., agree.